## Case No. 15,098.

UNITED STATES v. FIFTY-THREE BOXES OF HAVANA SUGAR.

UNITED STATES v. TWENTY-NINE AND ONE-HALF BOXES OF SUGAR.

[2 Bond, 346.] 1

District Court, S. D. Ohio. Feb. Term, 1870.

CUSTOMS DUTIES — UNDERVALUATION — SUGARS — FALSE GRADE—FALSE ENTRY—SMUGGLING —INNOCENT PURCHASER.

1. The consignee of goods, wares, or merchandise subject to duty, imported into the United States at an alleged fraudulent undervaluation, who has no knowledge of such fraud, and who, in good faith, makes advances to the consignor, and incurs expenses in the storage and management of the property, occupies the position of a bona fide purchaser, and his title will be protected.

2. A bona fide purchaser of such property, before the United States has elected whether to proceed for a forfeiture or sue for the value of the property, will hold the same as against the government claiming a forfeiture for fraud in the importation.

3. The fraudulent entry of goods at less than their actual value subjects them to forfeiture under section 1 of the act of congress of March 3, 1863 [12 Stat. 737], but that section, to constitute such a fraudulent entry as will subject the goods to forfeiture, requires that the entry should have been knowingly made on a false invoice.

4. Where the United States claim the forfeiture of sugars, on the ground that they were entered as of a grade which subjected them to a duty of three cents per pound, when they were of a grade subjecting them to five cents per pound, it must appear, by the evidence, that the importer had knowledge of the false grade, and that a fraud was intended; and, if this guilty knowledge and intent are negatived by the evidence, there is no ground for a judgment of forfeiture.

5. The entry of property at a custom-house, at a false valuation, does not subject it to forfeiture under section 4 of the act of July, 1866 [14 Stat. 179], "to prevent smuggling, and other purposes;" the scope and intent of said section being to prevent the clandestine introduction of property into the United States, to evade the payment of duties, known as smuggling, in the accepted sense of that term; and does not apply to a false entry at a custom-house.

At law.

Warner M. Bateman, Dist. Atty., and Lewis H. Bond, for the United States.

King, Thompson & Avery and Collins & Herron, for claimants.

LEAVITT, District Judge. As these cases present substantially the same questions, they have been submitted together, and do not require a separate consideration. In the first named of these cases, one hundred and twenty-three boxes of sugar were seized, by order of the collector, at Cincin-

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

nati, as having been imported in violation of law. An information was filed in this court, claiming the condemnation of this sugar. James H. Laws & Co., of this city, intervened in the case, and filed a claim to seventy of the one hundred and twenty-three boxes of sugar as bona fide purchasers; and, upon the hearing of the case, it appearing that they had purchased the sugar in open market, without any knowledge or intimation of any fraud in the importation, and before any seizure or other proceeding by the United States for the condemnation of the sugar or the recovery of its value, it was decided by this court, without any reference to the question of fraud, that the claim of Laws & Co., as innocent purchasers, was sustained, and the seventy boxes were accordingly awarded to them. On an appeal to the circuit court, the judgment of this court was affirmed. [Case unreported.] The claim of the United States is now against fifty-three of the one hundred and twenty-three boxes, in one case; and in the other, against twenty-nine and one-half boxes, being a part of another consignment also seized by order of the collector. These lots are separately proceeded against by the government as forfeited. And the question in both cases is, whether the alleged grounds of forfeiture are sustained. The ground of forfeiture relied upon by the United States, in both cases, is, in substance, that the sugar was imported from Havana, in the Island of Cuba, and entered at the custom-house at New Orleans, upon a false and fraudulent invoice and entry, in which the grade or quality of the sugar, being subject to a specific duty, was described as not above No. 12, Dutch standard; whereas its true grade or quality, by such standard, was 20 or upward. As the result of this false classification of the sugar, it is alleged the government was defrauded of two cents duty on every pound of the sugar. The information, in both cases, alleges that the sugar in question is forfeited to the United States—First, as being invoiced and entered in violation of section 1 of the act of congress of March 3, 1863; and, second, as subject to forfeiture under section 4 of the act of July 8, 1866. Adolphus Wood & Co., Cincinnati, have intervened in the first case named, and assert a lien on the fifty-three boxes, on the ground that the sugar was consigned to them, as commission merchants at Cincinnati, for sale, by the house of F. W. Perkins & Co., of New Orleans, and that in good faith, without any knowledge of any fraud in its importation, or any reason to suspect fraud, they received the sugar, made large advances to the consignors upon it, and have also a claim for commission, storage, and other charges.

Before passing to the consideration of the question of fraud, it may be proper to remark here that there can be no question that the lien asserted by Wood & Co. is equitable and valid, and must be sustained unless it shall be held that the sugar is subject to forfeiture,

as claimed under section 4 of the act of July 8, 1866. In that case the forfeiture, by operation of law, must be held to have occurred at the time the fraud was committed, and the asserted lien of Wood & Co. would not be available. On the other hand, if the court find there was fraud in the importation, and a ground of forfeiture under section 1 of the act of 1863, their claim must be sustained. They must be viewed as before the court in the light of innocent purchasers, and entitled to indemnity for their advances, commissions, etc., on the same principles that innocent purchasers would be entitled to protection. Their rights will therefore be dependent on the decision of a question hereafter to be considered. Perkins & Co. have filed answers in both the cases submitted, claiming the ownership of the sugar in question, asserting their claim as such, denying the fraud charged, or any knowledge of or participation in any fraud in the importation and entry of the sugar at the custom-house. The first question for consideration is, whether the allegation of fraud is proved, and whether, as a legal result, the sugar is subject to forfeiture. The questions arising in the cases have been ably argued, and are not, perhaps, wholly free from doubt.

If the sole question were whether this sugar paid the full duty imposed by law, I should not entertain any doubt. The evidence. I think, proves it was of a grade subjecting it by law to a duty of five cents per pound, whereas but three cents per pound was paid. It is true the evidence shows that a part of the two hundred and fifty-five boxes, of which the sugar in controversy was a part, was of a very low grade (No. 12), but what proportion was of this low grade does not appear. It was also proved that the sugar was graded by the custom-house officers, at New Orleans, according to a system of average then practiced there, and reported to the collector and the duty imposed as if it were of the minimum grade of No. 12, Dutch standard. While there are strong reasons for the conclusion that this average was erroneous, it is a proper inquiry whether the evidence so far implicates Perkins & Co. or Cavenna in any fraud in the entry of this sugar as will subject it to forfeiture under the law upon which the information is based.

This is the controlling question presented in this case. And, before adverting to the evidence, it will be proper to notice section 1 of the act of March 3, 1863, upon which the first charge in the information in both cases is framed. This section is of great length, very comprehensive, and very minute on the subject of the importation and entry of property from foreign countries. For the present purpose it will not be necessary to quote the entire section. It is clear, however, that the prevention of false and fraudulent invoices and entries of property, by undervaluation or false and fraudulent representations of quantities, quality, etc., is the

prominent object of the section. After a minute specification of the legal requirements in the entry of property, it is provided "that if any owner, consignee, or agent of goods, wares, and merchandise, shall knowingly make or attempt to make an entry thereof, by means of any false invoice, * * * or any invoice which shall not contain a true statement of all the particulars hereinbefore required, * * * or any other false or fraudulent practice or appliance whatever, the property, or its value shall be forfeited." There is not, in my judgment, room for a doubt that the allegations of fraud in the invoice and entry of the sugar at a grade below the true grade, as charged in the information, brings the case within the scope of this provision. And as Perkins & Co., and Cavenna, are the only persons implicated in the alleged false invoice and entry, the question for the decision of the court is, whether the evidence sustains the charge as against them. The clause of the first section just referred to provides for a forfeiture as the penalty where the owner, consignee, or agent shall knowingly make an entry upon a false invoice. As Perkins & Co., and John L. Cavenna, were the only persons interested in the sugar, and the only persons connected with the invoice and entry, the inquiry is, whether they jointly or by collusion, or either of them, knowingly participated in the alleged fraud; in other words, whether they had a guilty knowledge that a fraud was perpetrated or intended. It is clearly incumbent on the government, in order to establish its right to a forfeiture, to bring the knowledge home to the parties charged with the fraud, as the basis of a judgment of forfeiture. It is clearly not enough for the government to prove that the sugar was entered upon an erroneous grade, and the duty paid less than that imposed by law. The fraudulent intent must also appear; and such intent must be fairly inferable from the facts proved, and can not rest upon mere suspicion.

The facts relied upon by the government to sustain the charge of fraud are the entry of the sugar at an erroneous grade, the supposed fraudulent collusion between Cavenna and Perkins & Co., and some circumstances connected with the disposition and sale of the sugar by that firm, as indicating their knowledge of the alleged fraud. Now it was undoubtedly competent for Perkins & Co., as the owners of the sugar, to adduce proof in rebuttal and explanation of the facts proved by the government, and thus to repel the charge of fraud. This they have done with a view to relieve themselves from any presumption of any fraudulent intent, or any knowledge of any fraud in the transaction.

I shall advert only to some of the material facts proved, bearing on this question. These facts are before the court, chiefly from the depositions of J. L. Cavenna and F. W. Perkins. From these it appears that in the latter part of March, 1869, Perkins & Co., at the request of Cavenna, addressed a letter to the house of Lawton Brothers, merchants at Havana, in which they say that Cavenna wishes, through them, to order two hundred and fifty boxes of grocery sugar; such as, on an average for the lot, would be about No. 12. They direct the Havana house to charge the sugar to their account, and to send the invoice to Cavenna. Lawton Brothers shipped the sugar pursuant to this order. Before its arrival at New Orleans, Cavenna, for reasons stated in his deposition, proposed to Perkins & Co. to become the purchasers of the sugar, to which they assented. The entry at the custom-house was, however, made by Cavenna in his name, Perkins & Co. advancing the funds to pay the duties. The sugar was entered as of a grade not exceeding No. 12, though Cavenna, in his deposition, says he had not examined the sugar, or seen any samples of the grades, but supposed it was of the grade and quality ordered. The usual forms at the custom-house were observed. The sugar was appraised and inspected, and a report made to the collector, who issued the necessary papers, and the sugar was withdrawn from the warehouse, and delivered to Perkins & Co., and by them shipped to Cincinnati, for sale. Both Cavenna and Perkins deny that there was any fraudulent collusion between them in the purchase of the sugar, or in the entry at the custom-house. They say, that supposing in good faith the sugar purchased was of the quality ordered, the entry was made as of a grade not exceeding No. 12. It appears, also, from the depositions of the custom-house officials, that the sugar was graded as not above that number, and that duty paid accordingly.

The question of the right of the government to the forfeiture claimed under section 1 of the act of 1863, seems to turn upon the credit to be given to Cavenna and F. B. Perkins as witnesses. And I am aware of no principle on which the court can arbitrarily pronounce them unworthy of credit, and wholly ignore their testimony. Cavenna has no interest in the event of these suits, and there is no proof of any fraudulent collusion between these parties in reference to this transaction. Perkins, though interested, is a competent witness, and unless proved to be unworthy of credit, his testimony can not be rejected. No attempt has been made by the government to impeach either Cavenna or Perkins, by evidence of bad reputation for veracity when under oath; and receiving their statements as credible, they disprove the allegation in the information that they, or either of them, knowingly, or as charged, with a fraudulent intent, caused the sugar to be invoiced and entered at the custom-house at a grade below the true grade. There are, undoubtedly, some reasons developed in the case, justifying the suspicion that there was a design to get the sugar

through the custom-house upon a false invoice and entry. But it seems to the court that the transaction is explained by the evidence of Cavenna and Perkins, so as to relieve them from the charge of knowingly causing the entry to be made, as charged in the information. There was, obviously, a want of the care, vigilance, and exactness which may properly be looked for in such a transaction, but nothing that under the statute fixes the taint of fraud upon this sugar.

In this view of the case, the charge in the information, based on the act of 1863, is not sustained. The remaining question is, whether the case is within the operation of section 4 of the act of July, 1866. As noticed in a previous part of this opinion, the second charge in the information is framed under this section. It charges, in substance, that, by means of a fraudulent invoice and entry of the sugar, the full amount of the specific duty, imposed by law, was not paid, and that the said section 4 of the act of 1863 was violated, and the sugar subject to forfeiture under its operation. The question raised as to this charge in the information is, whether property imported, subject to duty, and entered at a custom-house, and which has passed under the scrutiny of the officers of the government, and has been delivered to the owner or consignee, without the payment of the full amount of duty chargeable, is an unlawful importation, within the meaning of said section 4, subjecting the property to forfeiture. Without quoting the section at length, it will be sufficient to notice that it provides that if any person shall fraudulently or knowingly import or bring into the United States any goods, wares, or merchandise, contrary to law, a forfeiture shall be incurred; and, in addition, the offending party be subject to fine and imprisonment.

It is claimed by the district attorney that the entry of the sugar in question was fraudulent, and in violation of law, for the reason that the full amount of duty was not paid. I do not propose to discuss this question at length. The views of the court, as stated, seem to dispense with the necessity of this. It is clear that if, in the importation and entry of the property, there was no guilty knowledge of any fraud perpetrated or intended, the section referred to does not apply. And as, according to the views already stated, such guilty knowledge in these cases is not made out by the evidence, it is not within the terms of the section.

There is another objection to this second charge, namely, that the section was intended only to embrace the case of property brought into the country clandestinely, with the fraudulent purpose of evading the import duty, and does not apply where it is entered at a custom-house and the forms of law observed, but in respect to which a fraud is subsequently ascertained. In other words, that the section embraces only acts of smuggling, in the usual and accepted meaning of the word. The title of the act is, "An act to prevent smuggling," and this is significant of the intent of the statute, notwithstanding the addition of the words, "and other purposes," to the title. Terms and phrases occur in many sections of the statute, indicating clearly that congress had it specially in view to prevent the illicit introduction of dutiable goods, wares, and merchandise; and it may be suggested that one of the main objects leading to the enactment of this statute was to put a stop to smuggling along the extended lines dividing the United States from foreign coterminous countries on the north and southwest. Many of the phrases and terms indicate that overland smuggling was prominently in the minds of the legislators who passed the statute. The inference does not seem reasonable that congress intended to supersede or interfere with the prior provisions of law, for the prevention of frauds in the entry of taxable property at a custom-house at a false valuation, if subject to an ad valorem duty, or a false grade or classification when subject to a specific duty. This object had occupied the attention of congress from an early period of the government. Section 66 of the act of 1799 [1 Stat. 677], was full and stringent on this subject. The act of March, 1863, is more explicit and comprehensive in its requirements than the old statute, and seems to embrace every possible case of fraud in the entry of goods, wares, and merchandise at a custom-house. Without going more fully into the consideration of this subject, I can see no reason for the conclusion that it was intended by section 4 of the act of July, 1866, to change all the previous legislation on this subject, and to provide that any unlawful act committed in the entry of property, imported openly, and entered at a custom-house, and suffered to go into the market after the scrutiny and inspection of the proper officers as duty paid, is subject to forfeiture under the section referred to, upon the discovery that the entry was erroneous or fraudulent. Former legislation had fully provided for such a case, and there was clearly no necessity for anything additional on the subject. There are many other considerations that might be urged to sustain this construction of the section referred to, but I do not think it necessary to expand this opinion, already too long, by adverting to them.

The result of the views I have presented is: (1) That the lien asserted by Adolphus Wood & Co. on the fifty-three boxes is valid, and must be satisfied out of the proceeds of the sale of the sugar, now in the hands of the marshal. (2) That the grounds of forfeiture set forth by the government in the informations are sustained, and the sugar in both the cases submitted is not subject to forfeiture. The marshal will, within thirty days from this day, pay to Perkins & Co., or their attorney, the balance of the pro-

ceeds of the sale of the sugar, after deducting the amount due to Wood & Co., which amount, if not agreed upon by the counsel, shall be ascertained by a reference to a master.

In announcing the conclusion of the court, it is proper, perhaps, to suggest that, in my judgment, Perkins & Co. are justly indebted to the United States to the amount of two cents on the pound of the sugar in controversy, that being the deficiency in the duty paid, and that an action could be sustained against them for the recovery of this sum. But the court, in this proceeding has no authority to render judgment for that sum, or make an order directing the marshal to retain it out of the money in his hands. It will be for the district attorney to adopt such course in relation to it as he may think proper.